United States Bankruptcy Court
Eastern District of Michigan
Southern Division- Flint

FILED
2005 OCT -7 PM 4:29
E.D. MICH-BAY CITY

In re:
HYDRO COMPLIANCE MANAGEMENT, INC.,
    Debtor.
_____/

Case No. 04-31387-WS
Chapter 11

HYDRO COMPLIANCE MANAGEMENT, INC.,
    Plaintiff,

v.

VICKI REID SMITH,
    Defendant.
_____/

Adv. No. 04-3122

**Opinion on Debtor's Motion for Partial Summary Judgment**

This matter is before the Court on Plaintiff Hydro Compliance Management's, ("Debtor") motion for partial summary judgment against Defendant, Vicki Reid Smith. The court has granted Debtor's motion.

### I. Facts

Defendant and David Woelkers incorporated Debtor in 1999. Debtor sold Hydro-Kleen, a product which removes pollutants in storm water that runs off streets and parking lots. In 2000, Debtor entered into a licensing agreement with Bamcon Engineering to produce and sell Hydro-Kleen. On April 8, 2004, Defendant and Debtor entered into a Stock Redemption Agreement ("Stock Redemption Agreement"), that included a Stock Retransfer and Non-Competition Agreements ("Non-Competition Agreement"), in which Debtor purchased Defendant's 50% shareholder interest for $2,285,220. On December 10, 2002, debtor and Defendant entered into

Addendum to Stock Redemption Agreement ("Addendum") that accelerated the timing of the payment due dates. On March 13, 2004, debtor filed for bankruptcy under Chapter 11. On November 2, 2004, debtor commenced this adversary proceeding against Defendant alleging three counts: (1) unauthorized distribution to shareholder under the Michigan Business Corporation Act ("MBCA"); (2) a constructive fraudulent transfer claim under Sections 544(b) and 550; and (3) claim disallowance under Section 502(d). On February 24, 2005, Debtor moved for partial summary judgment on Count 1, indicating that the payments under the Stock Redemption Agreement and Addendum constitute "distributions" under the MBCA.

## II. The Stock Redemption Agreement and Addendum

The Stock Redemption Agreement states that the redemption price of the shares shall be $200,000, made in two payments of one hundred thousand dollars ($100,000). Paragraph five discusses future installation payments, classifying them as "consideration to Vicki Reid Smith for the Non-Competition Agreement described in Section 4 and as additional consideration for the purchase of the Shares. . . ." Further, "[s]uch payments shall be allocated between the Non-Competition Agreement and consideration for the Shares in the manner provided in Section 5(c)." Section 5(c)(i) states, in relevant part, that "all minimum monthly payments under Section 5(a) shall be allocated to the Non-Competition Agreement. In the even the corporation pays more than the minimum payment in a given month the Corporation may, at its option allocate these excess payments as non-compete payments."

The Noncompetition Agreement stated that the parities to the agreement were Debtor and Defendant. It provided that for four years Defendant should not directly or indirectly engage in competition with Debtor. The agreement allowed the distribution of Hydro Kleen by a company

owned by Defendant and her husband in the line of business it conducted at the time of the agreement. The agreement stated that Defendant "shall not directly or indirectly, engage in, or have an ownership interest in or be associated with...any person, partnership, limited liability company, sole proprietorship, corporation, firm or other enterprise that directly competes with [Debtor.]"

The Addendum worked to accelerate the payments under the existing agreement. It did not alter the nature or makeup of the payments. Of the two million two hundred eighty five thousand two hundred twenty dollars ($2,285,220) total amount owed, there were two initial payments of one hundred thousand dollars ($100,000) each, which constituted two hundred thousand dollars ($200,000) in stock redemption. An additional one hundred sixty six thousand dollars ($166,000) was paid in monthly installments.

### III. Positions of the Parties

Debtor argues that the monies paid to Defendant were all in the nature of a distribution. Debtor indicates that $200,000 was clearly marked as stock redemption, and thus, falls under distribution. Debtor argues that the remaining one hundred sixty six thousand dollars ($166,000) also constitutes a distribution within the meaning of MCL 450.1106(4) because the future payments for the non-competition agreement were meant as additional consideration for the purpose of stock and even if it was for the purposes of a payment not to compete, it is covered under the statute because the payments were for the benefit of the shareholders.

Defendant concedes that two hundred thousand dollars ($200,000) of the three hundred sixty six thousand dollars ($366,000) constituted stock redemption, and thus was a distribution. Defendant however argues that the remaining one hundred sixty six thousand ($166,000) were payments under the non-competition agreement. Because the non-competition agreement

3

encompassed Debtor, her husband, and her two children, it was not a distribution because it was not solely to or for the benefit of Defendant.

The issue for partial summary judgment is narrow, and decides only whether the monthly transfers totaling approximately $166,000 were legal distributions under MCL 450.1106(4).

### IV. Relevant Law

Under the statutory definition of distribution:

"Distribution" means a direct or indirect transfer of money or other property, except the corporation's shares, or the incurrence of indebtedness by the corporation to or for the benefit of its shareholders in respect to the corporation's shares. A distribution may be in the form of a dividend, a purchase, redemption or other acquisition of shares, an issuance of indebtedness, or any other declaration or payment to or for the benefit of the shareholders. MCL 450.1106(4).

In interpreting a contract, the primary rule is to ascertain the intention of the parties. *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005). If the language of the contract is clear and unambiguous, the court will construe the contract according to its plain meaning and will not go outside the four corners of the contract. *Id.* The Court will not create ambiguity where the contract terms are clear. *Id.*

### V. Discussion

Under the plain language of the contact, the one hundred sixty six thousand dollars ($166,000) in monthly payments were "consideration to Vicki Reid Smith for the Non-Competition Agreement described in Section 4 and as additional consideration for the purchase of the Shares. . . ." Any payments for "shares" are specifically encompassed by the definition of distribution in MCL 450.1106(4). In this Court's view, payments for the non-compete agreement would also be encompassed under this definition of distribution because the payments are in the statutory language

4

"to or for the benefit of the shareholders." MCL 450.1106(4). They are so because the shareholders received an economic benefit by way of obligated payments in return for the non-compere commitment. Defendant's argument that the payments were also for her husband and children is unavailing because (1) the agreement was between Debtor and Defendant; (2) any benefit running to or obligation, if any from them was incidental and insubstantial; and (3) though outside the four-corners of the documents, Defendant's husband had his own vocation, and her children were minors who would not be of age by the completion of the non-compete agreement, supporting that the payments were not intended to benefit her husband or children.

By reason of the foregoing, Debtor's motion for partial summary judgment is granted.

Walter Shapero
U.S. Bankruptcy Judge

Entered _____